IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  5:15-CR-00254 |
| Plaintiff, | JUDGE LOLI |
| vs. | |
| FRANKLIN D. CONLEY, ET AL., | **MOTION TO SUPPRESS OF DEFENDANT FRANKLIN D. CONLEY** |
| Defendant. | |

 Now comes the Defendant, Franklin D. Conley ("Defendant"), by and through counsel, and moves this Honorable Court for an order suppressing all evidence that the Government may seek to introduce at trial in the above-captioned matter that resulted from the June 11, 2015 illegal search and seizure by the Ohio State Highway Patrol of the vehicle Defendant was driving.  Defendant submits that the burden of proof rests on the Government to justify the search and establish why the evidence seized should not be suppressed as it was obtained in violation of the Fourth Amendment to the United States Constitution.

 Wherefore, Defendant further submits that the Government will not be able to meet its burden of proof in order to establish the Constitutionality of search and seizure.  Accordingly, any evidence obtained as a result of the forgoing must be suppressed or barred.

 Defendant's position is further clarified in the attached memorandum, incorporated herein.

1

Respectfully submitted,

DICAUDO, PITCHFORD & YODER, LLC

*'s/J. Reid Yoder*
J. Reid Yoder (0076587)
ryoder@dpylaw.com
Thomas M. DiCaudo (0040258)
tdicaudo@dpylaw.com
209 South Main Street, Third Floor
Akron, Ohio 44308
Telephone: 330.762.7477
Facsimile: 330.762.8059

Attorneys for Defendant Franklin D. Conley

**MEMORANDUM IN SUPPORT**

**I.  STATEMENT OF FACTS**

On June 11, 2015 around 9:24AM, Mr. Conley was a driving rental car on Interstate 80 when the car was noticed by a member of the Ohio State Highway Patrol ("Trooper"). At the time, Mr. Conley's vehicle was travelling in the center of the three westbound lanes.  There was light traffic on the highway and the car was keeping up with the other traffic on the road. Although there was a significant distance between Mr. Conley's car and the next vehicle in that lane, the Trooper believed Mr. Conley to be travelling with another vehicle.The Trooper pulled onto the highway and began to tail Mr. Conley's vehicle. Mr. Conley activated his turn signal and moved over to the far right hand lane.  A brief moment later, the Trooper activated his overhead lights and initiated a traffic stop of the vehicle.  The Trooper alleged that Mr. Conley's vehicle was traveling too slowly and did not signal, but neither of those allegations are supported by the video taken from the Trooper's dashboard camera.

On reaching the vehicle, the Trooper engaged Mr. Conley.  The Trooper asked Mr. Conley for the vehicle's rental agreement and noticed that, according to the rental agreement, the car was due back a month earlier.  The Trooper then asked Mr. Conleyto exit the vehicle so that he would look into the status of the car rental and Mr. Conley's driver's license.

While Mr. Conley was sitting in the Trooper's cruiser, a second trooper led a canine around the car to sniff for the odor of narcotics, but that dog did <u>not</u> indicate or "show interest" in the vehicle detained by the Troopers.  The Trooper asked Mr. Conleyfor permission to search the car, but Mr. Conleyrefused and asked the Trooper to end the detention.  When Mr. Conleyrefused permission for the search, the Trooper went back to the vehicle to engage Mr.

3

Conley's passenger.  The Trooper continued to prolong his detention of Mr. Conley while he checked to see if Mr. Conley's passenger had any outstanding warrants, which she did not.

Then, twenty-two minutes after the Trooper discovered that the rental car was potentially overdue and only after being denied permission to search the car, the Trooper contacted the rental car company.  When on the phone with the rental car company, the Trooper learned that the rental agreement had been extended and the car was not due back until the following day, June 12, 2015.  At this point, the Trooper had accomplished the lawful purpose of the stop: he had issued Mr. Conley a warning for the alleged slow speed and had determined that the rental car was not overdue.  Instead of releasing Mr. Conley and his passenger, the Trooper continued to detain them for approximately three more minutes while he waited for a second canine unit to arrive and conduct another dog sniff of the vehicle.

Approximately half an hour after Mr. Conley had initially been stopped, another canine unit arrived.  After being led around the car, the dog did <u>not</u> indicate the presence of narcotics.  After the second dog sniff, the Trooper who stopped Mr. Conley used expletives to express his disappointment to the other troopers that neither dog had indicated the presence of narcotics.  The troopers admitted to each other that it was, at best, "debatable" if they could conduct a search and, ultimately conceded that they need to let Mr. Conley and his passenger go.  Despite this omission and the fact that <u>neither</u> canine indicated to the presence of narcotics and the lawful purpose of the detention had long since abated, the Trooper refused to release Mr. Conley.

Instead, the Trooper continued to detain the vehicle and its occupants another four minutes, waiting for a <u>third</u> dog sniff to be performed.  The Trooper placed Mr. Conley and his passenger in the back of the patrol car and, for the third time during the traffic stop led a dog around Mr. Conley's car.  Unlike the previous two dog sniffs, the troopers alleged this third dog

4

indicated. The troopers then proceeded to search the vehicle car and discovered a duffle bag containing $146,080.00. At no time during the search did the Troopers find any narcotics or contraband, but instead allege that the money contained trace amounts of narcotics.

The Troopers then seized the money and placed Mr. Conley and his passenger under arrest and transported them to a state highway patrol post. After detaining Mr. Conley and his passenger at the post, the Troopers released them without signing any charges. From the initiation of the stop to its conclusion, Mr. Conley was detained for approximately two hours and thirty-six minutes.

## II. LAW AND ARGUMENT

The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. *See*, *e.g.*, *Delaware v. Prouse* (1979), 440 U.S. 648, 662, 99 S. Ct. 1391. Generally, a police officer may not seize a person without a warrant unless he has probable cause to arrest the person for a crime. *Florida v. Royer* (1983), 460 U.S. 491, 498, 103 S.Ct. 1319.

A limited exception to this general rule requires articulable suspicion that a person committed or is about to commit a crime. *Terry v. Ohio,* (1967) 392 U.S. 1. Whenever an officer stops and accosts an individual restraining his freedom to walk away, he has seized that person within the meaning of the Fourth Amendment. *Id.* at 16. In *Terry v. Ohio*, the United States Supreme Court set the standard for reviewing the constitutionality of an investigatory stop. In order to justify such a stop and seizure, the officer must be able to point to "reasonable and articulable" facts warranting a rational belief that criminal activity is imminent. *Id.* at 21. Investigative stops and searches will be justified if the officer has reasonable suspicion supported by articulable facts. *Berkermer v. McCarty*, (1984) 468 U.S. 420, 104 S. Ct. 3138.

5

The United States Supreme Court has held that an officer must have more than a vague suspicion to justify stopping and detaining a person – the officer must have a reasonable suspicion that criminal activity is imminent and must be able to state specific facts to justify the conclusion that the defendant is engaged in criminal activity.  *Terry v. Ohio,* (1968) 392 U.S. 1., 88 S.Ct. 1868.  "The officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity."  *Illinois v. Wardlow*, 528 U.S. 119, 123-124, 120 S.Ct. 673 (2000) (internal quotations omitted), citing *Terry,* at 28.

### A. The Trooper Lacked Reasonable Grounds to Effectuate a Traffic Stop on the Vehicle.

A traffic stop is lawful if the officer has probable cause to believe that a traffic violation has occurred.  *United States v. Davis*, 430 F.3d 345, 352 (6th Cir.2005), *citing United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir.1996).  Slow speed, alone, does not arise to probable cause for an officer to stop a vehicle for a violation of Ohio's traffic laws.  *State v. Bacher*, 170 Ohio App.3d 457, 2007-Ohio-727, 867 N.E.2d 864.  In *Bacher*, the defendant was stopped for travelling twenty-three miles per hour below the posted speed limit of 65mph on I-71.  In finding that the trial court erred when it failed to suppress the stop, Ohio's First District noted that "[d]riving 42 and 43 m.p.h. in a 65-m.p.h. zone is not illegal or improper unless there is a posted minimum speed limit."  *Id.* at ¶13.  Additionally, a violation of Ohio's slow speed statute (R.C. § 5411.22) requires a showing that the slow-moving vehicle "impede[d] or blocke[d] the normal and reasonable movement of traffic."  *Id.*  Slow speed, by itself, is "devoid of circumstances suggesting criminal activity" and a stop for slow speed is unreasonable under the Fourth Amendment and Ohio law.  *Id.*

In the case *sub judice*, the Trooper's basis for the stop of Mr. Conley'svehicle was because the vehicle was allegedly traveling below the posted speed limit of 70mph and because

6

the vehicle allegedly failed to use its turn signal when it moved from the center lane to the far right lane.  However, the video taken from the camera in the Trooper's car shows Mr. Conley's vehicle traveling with the flow of traffic; the vehicle is not seen being passed on the right side by any cars or otherwise impeding the flow of traffic.  While the Trooper alsoalleged that Mr. Conley failed to use his turn signal, the vehicle's signal can be clearly seen in the video taken from the Trooper's cruiser, flashing prior to changing lanes. Because there is no evidence that Mr. Conley's vehicle impeded or blocked the normal and reasonable flow of traffic and because the video of the stop shows Mr. Conley using his turn signal prior to changing lanes, the Trooper lacked probable cause to stop Mr. Conley for a violation of Ohio's slow speed statute and lacked probable cause to stop Mr. Conley for failing to use his turn signal.

There was <u>no</u> traffic violation. Therefore, the Trooper lacked reasonable grounds to effectuate a stop of Mr. Conley's vehicle.  Accordingly the seizure of Mr. Conley based upon the alleged traffic violation was improper under the Fourth Amendment and any evidence stemming from the stop must be suppressed as unconstitutionally obtained.

### B. <u>The Trooper Lacked Reasonable Grounds to Detain Mr. Conley and the Vehicle Following the Stop.</u>

Assuming *arguendo*, there were reasonable grounds to stop the vehicle, the Trooper did not have probable cause or reasonable suspicion to conduct a search or detain Mr. Conley while he waited for three different canine sniffs to be conducted.

The duration of a traffic stop may last <u>no longer</u> than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable. *Rodriguez v. United States*, 575 U.S. ___ (2015).  Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or 'hunch.'*Terry*, 392 U.S. at 27.

7

Earlier this year, the United States considered the constitutionality of detaining a car for the purposes of a dog sniff following a stop for a minor traffic violation.  *Rodriguez v. United States*, 575 U.S. ___ (2015) (holding that the police stop exceeding the time needed to handle the matter for which the stop was made violated the Constitution).  In *Rodriguez,* the defendant was stopped when the officer observed defendant driving on the shoulder of the road, in violation of Nebraska traffic law.  After the officer finished checking the driver's license and issuing a written warning for driving on the shoulder, the officer continued to detain the driver for seven or eight minutes to allow a dog sniff.  While the Eighth Circuit upheld the stop on the grounds that the seven or eight minutes amounted to only a "de minimis" intrusion on the defendant's liberty, the US Supreme Court reversed and held that "[a]bsent reasonable suspicion, police extension of a traffic stop in order to conduct a dog sniff violates the Constitution's shield against unreasonable seizures."  *Id.* at syllabus.  The authority of the officer to seize the occupants of a vehicle ends when the task tied to the traffic infraction are, or reasonably should have been, completed.  *Id.*  The critical question is whether the dog sniff "prolongs" or "adds time to" the stop.  *Id.* at p. 8.   A traffic stop prolonged beyond the time in fact needed for the officer to complete the traffic-based purpose of the stop is unreasonable under the Fourth Amendment. *Id.* citing *Illinois v. Caballes,* 543 US 405, at 407.

Even assuming the first dog sniff was either justified or took place reasonably during the time in which the Troopers were conducting the lawful purpose of the stop, the Troopers were not justified in prolonging their detention of Mr. Conley and the vehicle after the first dog failed to alert the Troopers to the presence of narcotics.  The United States Sixth Circuit considered this very question, and held that where one dog fails to indicate to the presence of narcotics, police cannot be continue to hold a Defendant while they conduct additional dog sniffs.  *U.S. v. Davis*

430 F3d 345 (6th Cir. 2005).

In Davis, the defendant was stopped for speeding by officers who were tailing the defendant after he was observed meeting with an alleged drug dealer. Mr. Davis was detained while the officers brought a drug dog to the scene. Based upon the officers' observations of Mr. Davis with the alleged drug dealer, the court found that there was reasonable suspicion to detain Mr. Davis while the first dog was brought to the scene. *Id* at 354-355. However, the court found that Mr. Davis' constitutional rights were violated when Mr. Davis was then detained for an additional hour so that a *second* drug dog could be brought to conduct a sniff of Mr. Davis' vehicle. *Id* at 356. The court stated that "[o]nce the drug-sniffing dog was brought to the scene and failed to alert positively to the presence of narcotics in the vehicle, the officers' suspicions that Davis was in possession of narcotics were dispelled." *Id.*

> To allow police to delay further a suspect for the purpose of obtaining another drug-sniffing dog, whether intentionally or as the result of miscommunication, where the first dog failed to alert positively gives law enforcement power that comes only with probable cause. The Fourth Amendment allows police to detain a suspect on reasonable suspicion only for as long as it takes for the police to test the validity of their suspicions. Reasonable suspicion, a limited exception to the probable-cause requirement, does not permit unlimited bites at the apple. Officers must act to confirm or dispel their suspicions quickly. While they may be disappointed when their chosen investigatory technique dispels their suspicions, the Fourth Amendment does not permit them to keep trying until they obtain the desired results. To hold otherwise would permit the *Terry*-stop exception to engulf the general Fourth Amendment prohibition against search and seizure absent probable cause. We thus hold that the officers' detention of Davis's vehicle for the purpose of obtaining a second drug-sniffing dog violated the Fourth Amendment.

*Id.* at 357 (footnote omitted).

In the present case, the Trooper prolonged the stop beyond the time needed to complete the purpose of the stop. The initial purpose of the stop appears to be for the Trooper to issue a warning to the driver about travelling slower than 70mph in the center lane. While the Trooper

9

discovered a potential issue with the car's rental agreement during the stop, the Trooper's concerns regarding the agreement were dispelled, prior to the second and third dog sniffs, when the Trooper learned from the rental company that the car was not yet due back. There was no reasonable articulable suspicion to detain Mr. Conley while <u>three</u> different canine sniffs were conducted, especially in light of the dogs' failures to indicate to the presence of narcotics during the first two sniffs.

The Trooper unlawfully prolonged Mr. Conley'sdetention while waiting for the drug dog to arrive. Following the first dog's sniff around the car, any semblance of a reasonable suspicion dissipated when the dog indicated there was <u>no</u> contraband in the car. Instead of allowing Mr. Conley to be on his way, the Trooper continued his fishing expedition and the unlawful detention of Mr. Conley so that additional dogs could be brought in, hoping that different dogs would discover something where the first dog did not.

Because the troopers lacked reasonable suspicion to detain Mr. Conley so that they could conduct multiple dog sniffs, the seizure of Mr. Conley was unconstitutional under Fourth Amendment and the Supreme Court's holding in *Rodriguez, supra,* and in violation of Sixth Circuit precedent in *Davis, supra.*

### C. <u>Any Evidence Obtained and Property Seized as a Result of the Unlawful Stop and Seizure of Ms. McAlister must be Suppressed and Returned.</u>

The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion. *Wong Sun v. United States* (1963), 371 U.S. 471, 485, 83 S.Ct. 407. "The prohibition of the Fourth Amendment against unreasonable searches and seizures, which forbids the Federal Government to convict a man of crime by using evidence obtained from him by unreasonable search and seizure, is enforceable against the States through the Fourteenth Amendment by the same sanction of exclusion and by

the application of the same constitutional standard prohibiting 'unreasonable searches and seizures,' as defined in the Fourth Amendment." *Ker v. California* (1963), 374 U.S. 23, 30-31, 83 S.Ct. 1623 (citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684).

As detailed above, the Trooper's stop, detention, and search was unlawful under the Fourth and Fourteenth Amendment. For these reasons, Mr. Conley requests an Order suppressing all evidence obtained as a result of the unconstitutional search and seizure.

### III. CONCLUSION

Based upon the forgoing, Mr. Conley contends that the Government has not met its burden of proof establishing the constitutionality of the traffic stop and detention. Accordingly, any evidence obtained as a result of the forgoing must be suppressed.

Respectfully submitted,

DICAUDO, PITCHFORD & YODER, LLC

*/s/J. Reid Yoder*
J. Reid Yoder (0076587)
ryoder@dpylaw.com
Thomas M. DiCaudo (0040258)
tdicaudo@dpylaw.com
209 South Main Street, Third Floor
Akron, Ohio 44308
Telephone: 330.762.7477
Facsimile: 330.762.8059

Attorneys for Defendant Franklin D. Conley

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2015, a copy of the forgoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ J. Reid Yoder
J. Reid Yoder (0076587)