# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:15-cr-254-1 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| FRANKLIN CONLEY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of *pro se* petitioner Franklin Conley ("Conley") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. No. 153 ["Mot."].) Respondent United States of America (the "government") opposes the motion (Doc. No. 157 ["Opp'n"]), Conley has filed a reply (Doc. No. 159 ["Reply"]), and the government has filed a sur-reply. (Doc. No. 160 ["Sur-reply"].)[1] For the reasons that follow, Conley's § 2255 motion is DENIED.

## I. BACKGROUND

On August 19, 2015, a second superseding indictment was filed charging Conley and a co-defendant, Patrick Griffin ("Griffin"), with one count of conspiracy to commit Hobbs Act

---

[1] After the filing of the present motion, the Court set a briefing schedule requiring a reply to be filed within 30 days of the filing of the government's response. (Doc. No. 155 ["Order"].) The government's response was filed on February 11, 2020, and, in it, the government argued that Conley's motion was time-barred. (*See* Opp'n at 2071.) Conley was subsequently granted an extension of time until April 13, 2020 to file a reply, but his reply was not filed until April 21, 2020. In his reply, Conley requests that the Court excuse the lateness of the reply owing to the fact that his facility had previously been in lockdown, and he appended to the reply documentation establishing the dates of the lockdowns, most recently from December 18, 2019 to February 24, 2020. (*See* Reply at 2094.) While the documentation did not explain Conley's 7-day delay in April 2020, the Court still permitted the tardy reply, but because Conley raised new arguments in his reply, and because the government failed to address the merits of Conley's petition in its response, the Court granted the government leave to file a sur-reply.

extortion, in violation of 18 U.S.C. § 1951(a), five counts of conspiracy to possess with the intent to distribute controlled substances, in violation of 21 U.S.C. § 843(b), one count of possession with the intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and one count of transmitting threatening communications, in violation of 18 U.S.C. § 875(b). (Doc. No. 20 (Superseding Indictment ["S.I."]).) The charges related to the efforts of Conley and Griffen to attempt to extort money or a drug connection from former professional football player Christopher "Beanie" Wells. Conley elected to go to trial and Griffin elected to plead guilty.

At Conley's trial, Wells testified that his brother, Joey, called him in January or February 2015, and told him that he had provided Conley with contact information for a drug supplier, but that, when Conley and Griffin met with Joey's contact, the drug dealer stole their money without providing them with any drugs. Joey further indicated that Conley blamed Joey and wanted Joey to repay the lost funds. And when Joey advised that he did not have the money, Conley told Joey that he "better" contact Wells. Wells agreed to permit Joey to give Conley his cell phone number. (Doc. No. 119 (Trial Transcript) at 1337–41.)

Thus began a series of cellular phone calls and text messages between Conley and Wells wherein Conley threatened to hurt Joey or other family members unless Wells came up with approximately $150,000 and an alternative drug source. Wells advised Conley that he did not have the money immediately available, and that he would have to liquidate funds from businesses he owned. Wells explained that he owned several restaurants—Bodega, Grand View Café, and Halley's, all located in Columbus, Ohio—and a nationwide trucking company called Wells Porter Trucking. Wells also began to stall Conley for time before he eventually contacted the National Football League ("NFL") for assistance. (*Id*. at 1342–50.) The NFL notified the

FBI, who conducted the investigation that ultimately led to the arrests of Conley and Griffin.

On June 10, 2016, the jury returned guilty verdicts against Conley for interference with commerce by threats or violence, using a telecommunications device to facilitate a conspiracy to possess and distribute heroin, and transmitting in interstate commerce telephone calls and text messages containing threats to injure and kill. The jury acquitted Conley on the charge of possession with intent to distribute heroin. (Doc. No. 80 (Conley Jury Verdicts).)

On October 31, 2016, the Court sentenced Conley to a within-guidelines sentence of 115 months on the aforementioned charges, to be served consecutive to a 24-month sentence for a supervised release violation, for an aggregate term of 139 months imprisonment. (Doc. No. 196 (Conley Judgment).) Conley appealed his sentence, challenging the sufficiency of the evidence, alleged *Brady* violations, the effectiveness of trial counsel, the reasonableness of the sentence, and the undersigned's denial of his recusal motion.

On October 24, 2018, the Sixth Circuit affirmed the Court's judgment. (Doc. No. 143 (Order).) Relevant to the present § 2255 motion, the court found Wells' testimony that he would need to liquidate assets from businesses he owned that operated in interstate commerce sufficient to satisfy the nexus to interstate commerce. (*Id*. at 2020–21.) As to Conley's purported *Brady* violations, the court rejected Conley's argument that the government erred in failing to disclose public incorporation records for the businesses Wells identified in his trial testimony, finding that the government was under no duty to provide such documentation. (*Id*. at 2023.) Additionally, the court ruled that the undersigned did not err in denying Conley's *pro se* recusal motion as the purported basis for bias was his disagreement with the undersigned's rulings. (*Id*. at 2025.) The court abstained from ruling on Conley's ineffective assistance of counsel argument, noting that

such arguments should be reserved for a post-conviction proceeding under § 2255. (*Id*. at 2023.)

Conley filed the present motion to vacate on January 14, 2020.[2] His motion can be grouped into the following categories: (1) trial counsel's failure to investigate; (2) the government's failure to correct alleged perjured testimony; (3) appellate counsel's failure to investigate; (4) incorporation of the ineffective assistance of counsel claims raised on direct appeal; and (5) denial of due process.

## II. STANDARD OF REVIEW

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). "Relief is

---

[2] In its initial response, the government argued that the motion to vacate was untimely because it was not filed within one year and 90 days from date the Court entered judgment. (*See* Opp'n at 2017.) But because Conley filed a direct appeal (and did not seek certiorari review), he had one year plus 90 days from the date his direct appeal was final in which to file a motion under § 2255. *See Clay v. United States*, 537 U.S. 522, 525, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003); *Crowder v. United States*, 757 F. App'x 479, 481 (6th Cir. 2018). Conley's judgment of conviction became final on October 24, 2018. (*See* Doc. No. 143.) Accordingly, the ninety day period expired on or about January 22, 2019. Conley filed the present motion to vacate on January 14, 2020, well within the statutory period.

4

warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)).

The movant bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam). Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *see Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

A criminal defendant may not utilize a § 2255 motion as a substitute for a direct appeal. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 is an extraordinary remedy and should not be considered a substitute for direct appeal."). To assert a claim not raised on direct appeal, a petitioner ordinarily must show cause for the default and prejudice. *See Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998); *United States v. Frady*, 456 U.S. 152, 167–69, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).

Ineffective assistance of counsel claims are governed by the familiar standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under this standard, a petitioner must demonstrate that counsel's performance was deficient, and that this deficient performance caused prejudice to the petitioner. *Strickland*, 466 U.S. at 687. To demonstrate that counsel's performance was deficient, a petitioner must show that counsel

5

"made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id*. To establish that the deficient performance caused prejudice to the petitioner, he must show that the counsel's errors were so serious that the petitioner was deprived a fair trial. *Id*. Essentially, a petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"The reviewing court's scrutiny of counsel's performance is highly deferential," and "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689, 690), *overruled on other grounds by In re Abdur' Rahman*, 392 F.3d 174 (6th Cir. 2004). A petitioner's disagreements with the strategies or tactics of counsel are not enough to support an ineffective assistance of counsel claim. *Strickland* at 689; *see McQueen*, 99 F.3d at 1311 ("[T]rial counsel's tactical decisions are particularly difficult to attack, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy.") (quotation marks and citations omitted).

A criminal defendant does not have a constitutional right to demand that his trial counsel raise every possible issue. A failure to raise a claim will not amount to ineffectiveness so long as counsel "exercise[d] reasonable professional judgment." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). In fact, it is well settled that counsel cannot be ineffective for refusing to raise baseless arguments. *See Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (finding that counsel was not constitutionally ineffective for not pursuing meritless claims); *Krist v. Foltz*, 804

F.2d 944, 946 (6th Cir. 1986) (noting that "[a]n attorney is not required to present a baseless defense or to create one that does not exist").

Similarly, "[t]he Supreme Court has made clear that a criminal defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue on appeal." *Lee v. Haas*, 197 F. Supp. 3d 960, 973 (E.D. Mich. 2016) (citing *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)). "[W]innowing out weaker arguments on appeal and focusing on those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy," *Smith v. Murray*, 477 U.S. 527, 536, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986), and a failure to raise a claim will not amount to ineffectiveness so long as counsel "exercise[d] reasonable professional judgment." *Joshua*, 341 F.3d at 441. Further, even if the rejected claim is non-frivolous, the required showing of prejudice cannot be made if the claim lacks merit. *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2005). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quotation marks and citation omitted); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) (holding that appellate counsel "cannot be ineffective for a failure to raise an issue that lacks merit").

In regard to investigation, defense counsel has a duty to conduct reasonable investigations or make a reasonable decision that investigations are unnecessary. *See Sims v. Livesay*, 970 F.2d 1575, 1580–81 (6th Cir. 1992) (citing *Strickland*, 466 U.S. at 691). "While the temptation to rely on hindsight is particularly strong in the context of ineffective assistance claims based on counsel's failure to investigate, the court must conclude that counsel's strategic

choices made after less than complete investigation are not constitutionally deficient if a reasonable professional judgment supports the limitations on investigation." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001) (citing *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998)).

When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). A hearing is not necessary, however, when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" *Id*. (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where, as here, the judge considering the § 2255 motion also presided over the trial, the judge may rely on her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Because Conley's claims are clearly contracted by the record, the Court finds that an evidentiary hearing is unnecessary.

### III. DISCUSSION

#### A. Grounds Relating to Incorporation Documents

The first three categories of Conley's claims all relate to the argument Conley raised on direct appeal relating to the interstate commerce nexus evidence. Conley believes that public records demonstrate that Wells lied at trial about his ownership interests in various Columbus

8

area restaurants and a trucking company.[3] He appends to his reply documents from the Ohio Secretary of State identifying as the incorporator and statutory agent individuals other than Wells for the restaurants and truck company.[4] (Reply at 2099–2122.) According to Conley, the fact that Wells' name does not appear on these documents is irrefutable proof that he did not own the business he identified at trial. Continuing his argument, Conley posits that trial and appellate counsel should have discovered these documents and used them to refute the government's case at trial, and the government should have corrected Wells' "perjured" testimony. Conley's arguments are premised on a faulty understanding of Ohio corporation law and are without merit.

Under Ohio law, "any person" may form a corporation by filing with the secretary of state articles of incorporation that identify the name of the corporation, the place in the state where the principal office is located, and the purpose for which the corporation was formed. Ohio Rev. Code § 1702.04(A). There is no requirement that the owners of the corporation—or "members" as that term is used in the code—be identified. *See* § 1702.04(B) [noting that directors and/or members *may* be identified in the articles]. There is also no requirement that the "incorporator", who is simply the person who signs the articles of incorporation, or the statutory agent, who receives service on behalf of the corporation, be an owner or member. *see also* Ohio Rev. Code § 1702.01(F) [defining incorporator], (G) [defining member]; Ohio Rev. Code §

---

[3] To the extent that any of these arguments represent a mere repackaging of the arguments specifically rejected by the Sixth Circuit on direct appeal, they are denied for that additional reason. *See Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999) (Issues which are presented and decided on direct appeal may not be relitigated in a 28 U.S.C. § 2255 preceding absent exceptional circumstances); *see, e.g., Pego v. United States*, No. 12-cr-20496, 2016 WL 4698783, at *2 (E.D. Mich. Mar. 26, 2016) ("A movant cannot use a § 2255 proceeding, in the guise of ineffective assistance of counsel, to relitigate issues decided adversely to him on direct appeal.") (quotation marks and citations omitted, collecting cases). Of course, the issues reserved by the Sixth Circuit for consideration on collateral review remain appropriate topics for the present motion.

[4] It appears from these documents that Jameel S. Turner was the incorporator and statutory agent for Short North Bodega LLC, Grandview Café Investment LLC, and Wells Porter Trucking Ltd. Donna K. Ginn was the incorporator and statutory agent for 16606 Halley's Ridge Road, LLC. (*Id*.)

1705.06 [defining statutory agent and role].

The fact that Wells' name does not appear on these documents is not *any* evidence that Wells did not own these businesses. Because these public records would not have called the government's nexus evidence into question, neither trial nor appellate counsel can be faulted for having failed to discover and/or rely on these documents. Accordingly, Conley cannot establish either *Strickland* prong, and the first and third category of arguments are without merit. Further, because these documents do not support the conclusion that the government suborned perjury, Conley's second category of arguments also lacks merit.

### B. Ineffectiveness Claims Raised on Direct Appeal

On direct appeal, Conley argued that trial counsel was ineffective because of (1) counsel's failure to challenge the FBI special agent's testimony regarding the use of cell phones in interstate commerce; (2) his failure to pursue alleged defects in the indictment and jury forms; and (3) his refusal to file on his client's behalf a motion to recuse. (*See* Doc. No. 143 at 2023.) He incorporates these arguments, by reference, into the present motion to vacate.

Taking these points in reverse order, the Court finds that Conley has failed to demonstrate that his trial counsel was ineffective. On direct appeal, the Sixth Circuit determined that this Court did not abuse its discretion in denying Conley's *pro se* motion, finding no basis to recuse as Conley only cited his disagreement with this Court's judicial rulings. (Doc. No. 143 at 2025; *see* Doc. No. 94 (Order on Motion to Recuse); Doc. No. 93 (*Pro Se* Motion to Recuse).) Counsel's conduct cannot be considered deficient for failing to file a baseless motion.[5] *See*

---

[5] In a declaration appended to his reply, and relying exclusively on his prior *pro se* motion to recuse, Conley requests that the present § 2255 motion "be examined by a different judge as I believe my trial and sentencing judge will be biased." (Reply at 2078.) Once again, the Court finds that Conly has failed to identify any basis upon which recusal would be appropriate. His request is denied.

*Hoffner*, 622 F.3d at 499.

As to purported defects in the indictment and jury verdict forms, trial counsel challenged the superseding indictment by means of a motion to dismiss and further moved for a bill of particulars. (*See* Doc. No. 26 (Motion to Dismiss); Doc. No. 27 (Renewed Motion for a Bill of Particulars).) Trial counsel also lodged objections to the Court's jury instructions. Conley fails to explain how counsel's performance was deficient as to these efforts or how any such deficiency prejudiced him.

Finally, Conley offers no valid basis for challenging Agent Kunkel's testimony regarding the cellular phone calls identified in the indictment and the connection to interstate commerce. Prior to trial, defense counsel filed a motion in limine to exclude Agent Kunkel's testimony. (Doc. No. 69.) The Court denied the motion. (Non-document Order, June 6, 2016.) At trial, defense counsel advised that he had contacted a cell phone expert, but the expert reported that he agreed with Agent Kunkel's opinion that the cellular phone calls traveled through interstate commerce. (Doc. No. 120 (Trial Transcript) at 1561.) Counsel attempted to secure evidence to rebut Agent Kunkel's testimony, and he cannot be considered to have been deficient for failing to present evidence that would have only bolstered the government's case. Conley's reasserted claims of ineffective assistance of counsel fail.

### C. Due Process

Conley also claims he was denied due process in that he was "ambushed" by the fact that the defense was not apprised of the standard of proof that applied to the interstate nexus requirement, and that the government's theory regarding the interstate nexus was not made clear before trial. (Reply at 2090-91.) He also complains that the government "waited until the day of

11

summation before agreeing to the 'substantial effect' standard." (*Id*. at 2090.) To extent that this claim is properly raised for the first time in a collateral proceeding, the Court finds that it is without merit. The Court, not the government, determines the law that applies to the evidence that is received at trial. Both sides had access to the law, and the government has no duty advise defendant or his counsel on the law it believes the Court should apply. Additionally, Conley fails to explain how he was prejudiced by the Court's decision to apply the more stringent "substantial effect" standard—a standard advocated for by his counsel—at trial. Conley's due process claim is denied.

## IV. CONCLUSION

For the foregoing reasons, the motion of defendant Franklin Conley to vacate, set aside, or correct his sentence (Doc. No. 153) is DENIED, and this case is dismissed. Further, the Court CERTIFIES, pursuant to 28 U.S.C. § 2255(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: October 23, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**